IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


UNITED STATES OF AMERICA

    v.                              CRIMINAL CASE NO.
                                    CCB-12-280

KENNETH OAKLEY,

    Defendant
_____/


(Sentencing)
Friday, September 20, 2013
Baltimore, Maryland


Before:  Honorable Catherine C. Blake, Judge



Appearances:

    On Behalf of the Government:
     Michael C. Hanlon, Esquire


    On Behalf of the Defendant:
     Brendan A. Hurson, Esquire




Reported by:
Mary M. Zajac, RPR, FCRR
Fourth Floor, U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

1           (Proceedings at 9:17 a.m.)

2           MR. HANLON:  Your Honor, I call United States versus Kenneth Oakley, Criminal Case Number CCB-12-0280.  This matter is set for sentencing.  Michael Hanlon for the United States.  I'm joined at counsel table by Special Agent Marjorie Noel from the Bureau of Alcohol, Tobacco, Firearms and Explosives.

7           THE COURT:  All right.  Thank you.

8           MR. HURSON:  Good morning, Your Honor.  Brendan Hurson on behalf of Mr. Oakley.

10          THE COURT:  All right.  If we're all ready to proceed.  We are here for sentencing for Mr. Oakley following his guilty plea to the -- superseding information, is it?

13          MR. HANLON:  That's correct, Your Honor.

14          THE COURT:  Yes.  Charge of unlawful possession of a firearm, a stolen firearm.  And I have the Presentence Report with some amendments already made, I think, based on your letter, Mr. Hurson.

18          So let me just start.  Mr. Hanlon, looking at the Presentence Report as amended, any additions, corrections or modifications?

21          MR. HANLON:  No, Your Honor.

22          THE COURT:  And Mr. Hurson, anything else?

23          MR. HURSON:  No.  We had made one change to Page One, and we did it this morning and that was it.  Thank you.

25          THE COURT:  Okay.  All right.  And just to be clear,

1   Mr. Oakley also read the Presentence Report and discussed it with
2   you?
3              THE DEFENDANT:  Yes, ma'am.
4              THE COURT:  Okay.  Great.  It does indicate that, in
5   terms of the advisory guideline range, we start as an offense
6   level of 24.  There are two prior qualifying convictions.  The
7   parties agree that Mr. Oakley is entitled to a three-level
8   downward adjustment for acceptance of responsibility, which would
9   be an offense level of 21.  His criminal history category is a
10  VI, so the advisory guideline range would be from 77 to 96
11  months.
12             We're in agreement?
13             MR. HANLON:  Yes, Your Honor.
14             MR. HURSON:  Yes.
15             THE COURT:  All right.  And, of course, I've reviewed
16  the file and the Presentence Report and the plea agreement, and I
17  understand there's a recommended disposition.  And if you would
18  like to address that, Mr. Hanlon, why that's an appropriate
19  sentence.
20             MR. HANLON:  Thank you, Your Honor.  Again, I'll be
21  brief.  The government does believe, based on its evaluation of
22  all of the circumstances in this case, including the offense, but
23  also information about the defendant's background that's been
24  provided to me by Mr. Hurson, I believe the Court has some of it,
25  and, Mr. Hurson, you know, I'll say for the record, provided me

Case 1:12-cr-00280-CCB   Document 36   Filed 06/01/16   Page 4 of 12

4

1   some additional information which factored into the government's
2   decision to enter into this non-922(g) disposition, all of those
3   circumstances together led the government to believe that a
4   disposition other than under 922(g) was appropriate in this case,
5   which is why we did the superseding information.
6         It also led me to conclude that the recommended (C)
7   plea was also an appropriate disposition.
8         I factored in the defendant's criminal history, which
9   is substantial, and would often, in a typical case, cut in favor
10  of a higher recommendation by me.  But when combined with the
11  mitigation the defense provided, as well as some of the
12  background and the specific circumstances of the gun possession
13  in this case, which is very serious, but there's mitigation
14  provided by the defendant's background, I was led to conclude
15  that a 90-month sentence would be an appropriate balancing of
16  those various factors.
17        It's still within the guidelines range under the stolen
18  gun offense.
19        THE COURT:  Right.
20        MR. HANLON:  So it's supported under that 3553(a)
21  factor.  And the government believes it appropriately balances
22  the other factors under 18 USC Section 3553(a), including the
23  nature of the offense, which is a serious one, as well as the
24  defendant's criminal history, as well as the rest of his
25  background.  So the government recommends the 90-month

1   disposition.

2   THE COURT: Okay. Thank you, Mr. Hanlon. I believe I
3   know essentially what you're referring to in terms of the
4   mitigation in Mr. Oakley's background. Certainly, I'd be happy
5   to hear anything additional Mr. Hurson would like to say.
6   Obviously, the charge could have been a lot more serious.

7   MR. HURSON: It originally was. And Mr. Oakley and I,
8   as you can tell, we've been together a long time. Originally,
9   this case was assigned to Ms. Newberger, and it was transferred
10  to me when she went on leave. Over the course of the years that
11  we've, Mr. Oakley and I, have been together, we were able to
12  track down a lot of the documents about his life, school records.
13  We were able to have him looked at by some medical professionals.

14  Basically, what we determined was that at the time he
15  committed this offense he was, for lack of a better term, in
16  really bad shape. He was paranoid. He was, he was not properly
17  medicated. He wasn't doing well at all. And when he was caught
18  with a firearm that day, he was clearly not supposed to be in
19  possession of a gun and lawfully couldn't, and he knows that.
20  But he wasn't thinking rationally at the time.

21  Over the course of being at Supermax, he's had a number
22  of physical ailments that have been addressed. And he's been
23  medicated and he's been doing really well.

24  I've noticed in the years we've been together a
25  physical transformation, emotional transformation. And quite

1   frankly, the government didn't have to do this.

2              And I was listening to Eric Holder's speech before the

3   Congressional Black Caucus yesterday about how high sentences

4   generate disrespect for the law.  And Mr. Hanlon, though he

5   wasn't privy to that speech at the time, and this doesn't fall

6   under, necessarily, the guidelines that the Justice Department

7   has now issued for mandatory minimums, I really credit the

8   government for seeing this sentence of what would have been 15

9   years minimum really was not appropriate for someone like Mr.

10  Oakley, whose record includes nothing but small, hand-to-hand

11  drug transactions.  And Mr. Hanlon is the one who saw it as it

12  was.

13             Certainly, it merits punishment, and I think 90 months

14  is stiff punishment.  But Mr. Oakley accepts that.  And he, too,

15  thanks the government.  He's not going to say anything today at

16  sentencing, but he really does thank Mr. Hanlon for giving him

17  the opportunity to take a charge that was maybe a little bit more

18  in line with what was appropriate.

19             So we have nothing else to add.  We'd ask that the

20  Court consider a designation to FCI Fairton, F-A-I-R-T-O-N.

21             THE COURT:  Fairton.

22             MR. HURSON:  That's correct.  I've done Mr. Oakley's

23  BOP numbers, if you will, and it seems like he'll be classified

24  at a medium.  And they can handle, it appears, his medication

25  needs.

1           Beyond that, we have a consent order of forfeiture that
2  I think is before Your Honor.  We obviously don't contest the
3  forfeiture of the firearm.  That was included in the plea
4  agreement.  And again, I thank the government.
5           THE COURT:  Thank you.  I do have a consent order of
6  forfeiture.  Not clear to me that Mr. Oakley has signed it.
7           MR. HANLON:  Your Honor, I did not elicit the
8  defendant's signature.  The plea agreement calls for forfeiture
9  and it's part of the agreement.  I shared it with Mr. --
10          THE COURT:  That's sufficient?
11          MR. HURSON:  Yes.
12          THE COURT:  Okay.
13          MR. HANLON:  I figured fewer signatures may be easier.
14          THE COURT:  And were there any other recommendations to
15 the Bureau of Prisons that would be appropriate?  It seemed to
16 me, in terms of supervised release, that mental health
17 counseling, vocational, educational programs, and substance abuse
18 treatment, if and as the probation officer thinks it's necessary.
19          MR. HURSON:  That's fine, Your Honor.  We would ask for
20 all those things.
21          THE COURT:  Okay.  And FCI Fairton.  Any specific
22 reason to --
23          MR. HURSON:  Well, the proximity to the family is the
24 number one reason.
25          THE COURT:  Okay.

1        MR. HURSON:  Mr. Oakley had looked at some programming
2   there that he thought was appropriate to him, although it's
3   escaping me exactly what program it was.  I think it would be
4   sufficient to say that the programming offered at Fairton is in
5   line with defendant's needs.
6        I want to make sure -- we changed it again -- but he
7   has been incarcerated since March 7th, 2012.  And it was
8   originally a state case, which was nol prossed.  But for purposes
9   of the judgment, if Your Honor could note that he has been in
10  custody since March 7th, 2012, that would be, that may help to
11  ensure that he gets the proper credit for time.
12       THE COURT:  Okay.  Obviously, it's up to the Bureau of
13  Prisons to do that.  But you've got a date of arrest is March
14  7th.  The May 7th is going to become March 7th on the front page.
15  That's fine.  It will provide that the sentence should begin as
16  of March 7th, 2012.
17       MR. HURSON:  Thank you.
18       THE COURT:  Give him credit for that.  Mr. Oakley, as
19  you know, you have a right to speak if you want to.  Your
20  attorney has indicated that you don't want to at this point,
21  which is absolutely fine.  But I just need to advise you of that
22  and make sure.  If there's anything you would like to say, you
23  have the right to do that.
24       THE DEFENDANT:  No, ma'am.
25       THE COURT:  Okay.  Well, thank you all.  I do, I was

1   inclined coming in, or I would have let you know, and what you've
2   told me supports the recommended disposition that you both came
3   up with.  It did appear to me that there are, while this is a
4   very serious offense, obviously, it's dangerous for Mr. Oakley as
5   well as for the public, clearly, there were mitigating factors in
6   Mr. Oakley's personal situation and in his perhaps mental and
7   emotional state at the time of the offense.
8           His criminal history, while certainly lengthy, again,
9   does not reflect the kind of violence or danger that would
10  warrant a much more serious sentence, which certainly he could
11  have been looking at.
12          I appreciate the government's recommendation and
13  reasonableness as well.  I do think what you all have agreed to
14  is appropriate for the reasons you explained.
15          So the sentence on this superseding information, the
16  unlawful possession of a stolen gun, will be 90 months in the
17  custody of the Bureau of Prisons.  I'll recommend that you be
18  designated to FCI Fairton to be close to your family, and on
19  account of the programming that's available.  Of course, it's
20  ultimately up to the Bureau of Prisons.  But I'm happy to
21  recommend that.  The sentence should begin as of March 7th, 2012,
22  when you came into custody on this charge.
23          Now, there will be a period of two years of supervised
24  release when you come out of incarceration.  And there's some
25  special conditions there that I hope will be helpful, which is

1   any mental health testing, treatment, evaluation, counseling, the
2   probation officer recommends, and any vocational or educational
3   program the probation officer recommends, as well as
4   participation in any substance abuse treatment or counseling that
5   the probation officer recommends.
6           Your financial circumstances don't permit imposition of
7   a fine so there won't be a fine.  There is a required $100
8   special assessment that I do have to impose.
9           And, of course, I'm sure that the probation officer and
10  Mr. Hurson will make sure that all the appropriate medical
11  information gets to the Bureau of Prisons.
12          Anything I have not addressed?  Anything I've left out
13  of that sentence?  Any legal objection.
14          MR. HANLON:  I have counts to dismiss, Your Honor.
15          THE COURT:  Sure.
16          MR. HURSON:  That was it for me, Your Honor.  Thank
17  you.
18          THE COURT:  Okay.  If you want to go ahead with the
19  counts.
20          MR. HANLON:  Yes, Your Honor.  In light of the
21  defendant's plea of guilty to the superseding information, the
22  government moves to dismiss the original indictment.  I believe
23  there was only one indictment.
24          THE CLERK:  Yes.
25          MR. HANLON:  That's confirmed.  Thank you.

1     THE COURT:  That will be dismissed.  Mr. Oakley, in
2 light of the plea agreement and the sentence that you've just
3 been given, I don't believe there's anything you probably have a
4 right to appeal from or would necessarily want to.  But you can
5 consult with Mr. Hurson.  If you were going to file any appeal,
6 that would need to be within 14 days.  Do you understand that,
7 sir?
8     THE DEFENDANT:  Yes, ma'am.
9     THE COURT:  Okay.  Good luck.  I have signed the
10 forfeiture order.
11     (Conclusion of Proceedings at 9:29 a.m.)

1     REPORTER'S CERTIFICATE

2

3      I, Mary M. Zajac, do hereby certify that I recorded

4  stenographically the proceedings in the matter of USA v. Kenneth

5  Oakley, Case Number(s) CCB-12-280, on September 20, 2013.

6      I further certify that the foregoing pages constitute

7  the official transcript of proceedings as transcribed by me to

8  the within matter in a complete and accurate manner.

9      In Witness Whereof, I have hereunto affixed my

10 signature this _____ day of _____, 2016.

11

12

13

14                              _____
                                Mary M. Zajac,
15                              Official Court Reporter

16

17

18

19

20

21

22

23

24

25